UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ASHLEY N. THIBAULT<br>*Plaintiff,*<br>v.<br>MOLLY SPINO, *individually, and* TORRINGTON BOARD OF EDUCATION,<br>*Defendants.* | Civil No. 3:19-cv-872 (JBA)<br><br>December 30, 2019 |

## RULING DENYING DEFENDANTS' MOTION TO DISMISS

In this § 1983 action, Plaintiff Ashleigh Thibault claims that her First Amendment rights were violated when she was fired from her position as a contract public school bus driver after engaging in political speech on Facebook. The firing occurred after Ms. Thibault criticized Defendant Molly Spino, a member of the Torrington Board of Education ("Board"), who was running for a seat as a state legislator. Ms. Thibault's Facebook post criticized Ms. Spino's performance as a mother, described Ms. Spino's children as bullies, and endorsed Ms. Spino's opponent.

Defendants Molly Spino and the Torrington Board of Education now move under Fed. R. Civ. P. 12(b)(6) to dismiss Count One, which alleges a First Amendment retaliation claim. Defendants contend that Plaintiff's speech did not address a matter of public concern, and so was not protected. Defendant Spino also moves to dismiss Count Two—a similar retaliation claim to which she is the only defendant—on the basis of qualified immunity.

For reasons discussed below, Defendants' Motion [Doc. # 27] is denied.

### I. Facts Alleged

Plaintiff Ashleigh Thibault is a resident of Torrington, Connecticut. (Am. Compl. [Doc. # 26] ¶¶ 4, 10.) During the time period relevant to this action, Plaintiff Thibault was employed as a

school bus driver for All-Star Transportation, Inc. ("All-Star"). (*Id.* ¶¶ 7, 9.) All-Star maintained a contract with the Defendant Torrington Board of Education to provide transportation to children enrolled in the Torrington Public Schools system from July 1, 2013 to June 30, 2018. (*Id.* ¶¶ 7, 8.) That contract stated that the "Board reserves the right . . . to require the immediate termination of any of [All-Star's] employees at any time for due and sufficient cause," (*id.* ¶ 8), which includes the "[v]iolation of standards of conduct towards the public, staff, students, or other employees of the board," (Ex. A (All-Star Contract) to Defs.' Mot. [Doc. # 27-2] at 9).

Defendant Molly Spino is a member of the Torrington Board of Education. (Am. Compl. ¶ 5.) In 2018, she ran for the Connecticut General Assembly seat in the 65th Assembly District, where Plaintiff is registered to vote. (*Id.* ¶¶ 10, 11.) Defendant Spino's opponent was incumbent Michelle Cook. (*Id.* ¶ 12.)

On June 25, 2018, Plaintiff posted a public message on the "Michelle Cook For State Representative" Facebook page, endorsing Ms. Cook and criticizing Defendant Spino. (*Id.* ¶ 13; *see also* Ex. E (Facebook Post) to Defs.' Mot. [Doc. # 27-6].) Plaintiff's Facebook Post "followed another post that was critical of Defendant [Molly] Spino's performance as a member of Defendant Board," and it read as follows:

> Unfortunately, Molly will never take the blame of things ... much like her children! I have bit my tongue for quite sometime now ... but with this all being said and done. Politics in this town are absolutely disgusting. My child was singled out, bullied, talked down to ... BY HER CHILDREN. She should focus on getting her mess under control... Before worrying about anything else! You have done a wonderful job thus far Michelle.

(Am. Compl. ¶ 15 (ellipses in original).) Ms. Cook responded that she was "sorry [Plaintiff] and [Plaintiff's] family have had this happen" and that she was "willing to help in any way [she] can."

2

(Facebook Post at 1.) Ms. Cook also "ask[ed] that this being taken to a private message as [she]'d rather not discuss something this personal in the open—especially with children involved." (*Id.*)

On or about June 26, 2018, Defendant Spino "telephoned Plaintiff's employer, All-Star, to complain about Plaintiff's posting on Cook's Facebook campaign page." (Am. Compl. ¶ 16.) That same day, Defendant Spino and an attorney "met with representatives of All-Star to complain about Plaintiff's posting on Cook's Facebook campaign page." (*Id.* ¶ 17.)

The next day, the Board sent a letter to All-Star. (Ex. F (Termination Letter) to Defs.' Mot. [Doc. # 27-7].) The June 27, 2018 letter "invoke[d] the District's right to require the immediate termination of Ms. Ashleigh Nicole Thibault from all Torrington assignments for 'due and sufficient cause'":

> Under the terms of that agreement, due and sufficient cause is defined, in part, as "violations of standard of conduct towards the public, staff, students or other employees of the Board." On or about June 25, 2018, Ms. Thibault posted a comment on social media that referenced Torrington students in an unprofessional and unacceptable manner. Such conduct violated state and federal laws regarding student confidentiality that she, as an agent of the BOE in her capacity as a school bus driver, has an obligation to adhere to. We cannot and will not tolerate such conduct toward any of our students.

(*Id.*) Following the receipt of this letter, All-Star terminated Plaintiff from her employment as a school bus driver. (Am. Compl. ¶ 19.)

Plaintiff now sues Defendants Molly Spino, in her individual capacity, and the Torrington Board of Education. (*Id.* ¶¶ 5, 6.) Count One recites a First Amendment retaliation claim brought under 42 U.S.C. § 1983, and it alleges that both "Defendants caused All-Star to terminate Plaintiff's employment" in response to her speech "endorsing a political candidate and criticizing her opponent on a campaign social media site." (*Id.* ¶¶ 20-23.) Count Two raises a nearly identical retaliation claim, but it is directed only at Defendant Spino and makes the additional allegation

3

that Defendant Spino's acts "were taken with malice and reckless disregard" for Plaintiff's rights. (*Id.* ¶ 24.)

Defendants Spino and the Board move to dismiss these claims.[1] Both Defendants move to dismiss Count One, for failure to state a claim. Defendant Spino also moves to dismiss Count Two, on the grounds that she is entitled to qualified immunity.

## II. Discussion

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss under Rule 12(b)(6), a court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79.

### B. Incorporated Documents

Defendants have attached multiple exhibits to their Motion to Dismiss: the contract between All-Star and the Board (Ex. A (All-Star Contract)), the Torrington School District's Social Media policy (Ex. B (Social Media Policy) to Defs.' Mot. [Doc. # 27-3]), the Torrington School

---

[1] Plaintiff also brings a claim of common-law tortious interference against Defendant Spino, which is not at issue in this motion. (*Id.* ¶¶ 26-31.)

District's Family Educational Rights and Privacy Act ("FERPA") policy (Ex. C (FERPA Policy) to Defs.' Mot. [Doc. # 27-4]), the City of Torrington's Code of Ethics (Ex. D (Torrington Ethics Code) to Defs.' Mot. [Doc. # 27-5]), a screenshot of Ms. Thibault's Facebook post (Ex. E), and the Termination Letter from the Board to All-Star (Ex. F).

Although Plaintiff has not opposed Defendants' introduction of these exhibits, expressing the view at oral argument that they were irrelevant to the outcome of Defendants' motion, nonetheless the Court considers whether they may be reviewed without converting Defendants' motion into a motion for summary judgment.

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (cleaned up). A document is incorporated if the complaint expressly refers to it, *see id.*, and a document is considered integral "where the complaint relies heavily upon its terms and effect," *Chambers*, 282 F.3d at 153 (internal quotation marks omitted). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough." *Goel*, 820 F.3d at 554. "This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016). "Thus, if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

The All-Star Contract, the Facebook Post, and the Termination Letter all clearly satisfy this standard. The Complaint expressly references and quotes from the All-Star Contract, (*see* Am. Compl. ¶¶ 7, 8), the Facebook Post, (*see id.* ¶ 15), and the Termination Letter, (*see id.* ¶ 18).

However, Plaintiff's Complaint does not make any reference to or rely upon the Social Media Policy, the FERPA Policy, or the Torrington Ethics Code. In their Motion to Dismiss, Defendants assert that these policies are incorporated at a second-order remove through the All-Star Contract. (Defs.' Mot. at 2.) But as Defendants conceded at oral argument, the All-Star Contract does not expressly mention any of these documents.[2] As such, the Court will not consider the Social Media Policy, the FERPA Policy, or the Torrington Ethics Code when addressing this motion.

### C. Count One

Defendants move to dismiss Count One on the grounds that Plaintiff has not stated a claim of First Amendment retaliation. They argue that Plaintiff's speech was not protected by the First Amendment because it was "purely personal in nature and, therefore, not on[] a matter of public concern." (Defs.' Mot. at 10.) Plaintiff responds that her Facebook Post is protected because it was off-duty, non-work-related speech that was political in nature. The Court agrees with Plaintiff that her speech is protected by the First Amendment as a matter of law.

---

[2] At oral argument, Defendants directed the Court to the Contract's "Staffing" section, which provides that a contractor's employees may be terminated "at any time for due and sufficient cause," which "may include, but is not limited to" a "[v]iolation of standards of conduct towards the public, staff, students, or other employees of the Board." (All-Star Contract at 9.) But this general provision alone does not require the conclusion that Plaintiff was aware that the attached applied to her off-duty, non-job related activities or that Plaintiff had "notice that the[se] material[s] w[ould] be considered to resolve factual matters." *Nicosia*, 834 F.3d at 231.

6

To state a *prima facie* case of retaliation, Plaintiff must allege that "(1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [plaintiff]; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). For the purposes of this motion, Defendants only contest the first element concerning First Amendment protection. (Defs.' Mot at 9.)

As a basic principle, the First Amendment protects independent contractors like Plaintiff "from the termination of at-will government contracts in retaliation for their exercise of the freedom of speech." *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 670 (1996). Nevertheless, the government has "interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general," *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968), and those same interests apply to contractors, *Umbehr*, 518 U.S. at 673. In *Pickering*, the Supreme Court developed a framework for balancing these competing interests. First, a court is to determine whether the speech is protected by asking whether a public employee or contractor "speaks 'as a citizen upon matters of public concern' rather than 'as an employee upon matters only of personal interest.'" *San Diego v. Roe*, 543 U.S. 77, 83 (2004) (per curiam) (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). If the speech is indeed protected, then the court proceeds to balance the speaker's interest against that of the government. *See id.*

When making the threshold inquiry of determining whether an employee's speech is protected, a court asks "whether the subject of the employee's speech was a matter of public

concern." *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011).[3] Notably, "[s]ome courts, including both the Second Circuit and the Supreme Court, have questioned the extent to which the public concern test applies to off-duty speech on topics unrelated to employment." *Jean-Gilles v. Cty. of Rockland*, 463 F. Supp. 2d 437, 449 (S.D.N.Y. 2006). The Second Circuit has stated, without directly holding, that it is "sensible" to "treat off-duty, non-work-related speech as presumptively entitled to First Amendment protection regardless of whether, as a threshold matter, it may be characterized as speech on a matter of public concern." *Locurto v. Giuliani*, 447 F.3d 159, 175 (2d Cir. 2006); *accord Jean-Gilles*, 463 F. Supp. 2d at 450 ("If the plaintiff can demonstrate his speech centered on a matter of public concern—or if the plaintiff's speech concerned off-duty speech unrelated to his employment—the court must balance the parties' competing interests.").

If a court does reach the question of "[w]hether an employee's speech addresses a matter of public concern," then the answer "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. "Although the boundaries of the public concern test are not well defined," the Supreme Court has advised that "public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *Roe*, 543 U.S. at 83-84. The "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin v. McPherson*, 483 U.S. 378, 387 (1987).

---

[3] A court also asks "whether the employee spoke 'as a citizen' rather than solely as an employee," *Jackler*, 658 F.3d. at 235, and considers whether "the fact of employment is only tangentially and insubstantially involved in the matter of public communication," *Pickering*, 391 U.S. at 574. For this motion, Defendants concede that Plaintiff acted as a citizen. (Defs.' Mot. at 10.)

8

In contrast, "speech that primarily concerns an issue that is personal in nature and generally related to the speaker's own situation, such as his or her assignments, promotion, or salary, does not address matters of public concern." *Gorman v. Rensselaer Cty.*, 910 F.3d 40, 45 (2d Cir. 2018) (internal quotation marks omitted). When conducting this analysis, "the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir. 1999). But the existence of a personal grievance is not necessarily determinative, as "an individual motivated by a personal grievance can simultaneously speak on a matter affecting the public at large." *Montero v. City of Yonkers*, 890 F.3d 386, 400 (2d Cir. 2018) (internal quotation marks omitted).

The Court begins its analysis by considering Plaintiff's contention that her speech is entitled to First Amendment protection as "off-duty, non-work-related speech," (Pl.'s Opp. [Doc. # 29] at 10 (quoting *Locurto*, 447 F.3d at 175)), because her Facebook Post "was made outside the workplace" and "says nothing about school buses or Plaintiff's position as a bus driver," (*id.* at 8).

Defendants respond that "although perhaps 'off-duty,' Plaintiff's conduct *was* work-related," and so should not be presumptively entitled to First Amendment protection. (Defs.' Reply [Doc. # 36] at 2.) Defendants argue that the Facebook Post was work-related because "Plaintiff's comments were about Ms. Spino's children, who are Torrington students," and thus "Plaintiff cannot deny that she was commenting directly on the behavior of Torrington students," whom she drives to school. (*Id.*) In making this argument, Defendants ask the courts to infer that "as residents of Torrington, both Plaintiff's and Ms. Spino's children attended the Torrington Public Schools." (*Id.*; *see also* Defs.' Mot. at 2 ("Since she was a Torrington resident, it can be inferred from the Amended Complaint that Plaintiff's children attend the Torrington Public Schools.").) Finally,

9

Defendants observe that *Locurto*'s statement about off-duty speech is dicta, because the Second Circuit did not ultimately rule on whether the speech was protected. (Defs.' Reply at 5 n.3).

Defendants' argument as to the work-related nature of Plaintiff's speech fails. Plaintiff's speech was not made in a work setting. Plaintiff's speech was published on an Assembly candidate's Facebook page, and it made no reference to her work as a Torrington school bus driver. And assuming *arguendo* that the Facebook Post discussed Torrington students,[4] Plaintiff's statement that "[her own] child was singled out, bullied, talked down to . . . BY [DEFENDANT SPINO'S] CHILDREN" does not appear in any way related to her professional knowledge or experience as a bus driver. Plaintiff was not speaking as a driver commenting on the behavior of her passengers. Rather, Plaintiff was speaking as a parent commenting on the behavior of Defendant Spino's children toward her own.

However, because Defendants are correct that *Locurto*'s statement on off-duty speech is dicta,[5] the Court must reach the question of whether Plaintiff's speech satisfies the public concern test. Plaintiff contends that her speech was on a matter of public concern because "the content of the Facebook post was the endorsement of a political candidate and the denunciation of her opponent" and because such speech made in the context of an election "inevitably addresses a

---

[4] The Court notes that Plaintiff did not identify Defendant Spino's children as Torrington students in the Facebook Post, nor she does do so in her Complaint. As the Court is required to make all reasonable inferences in Plaintiff's favor on a Rule 12(b)(6) motion, it cannot rule out the possibility that Ms. Spino's children are being educated somewhere outside the Torrington Public Schools system.

[5] Although *Locurto*'s proposed rule on off-duty and non-work-related speech is not binding, this Court agrees that it is logical and comports with the Supreme Court's *Pickering* line of cases. If it were otherwise, government employers could take adverse actions against their employees for expressing inconsequential opinions that have no bearing on their work.

matter of public concern." (Pl.'s Opp. at 11.) Plaintiff also notes that she published her post on a "public communications forum devoted to a legislator's re-election campaign" and that her post was in dialogue with "another post endorsing Cook and criticizing Spino's performance on the Board of Education." (*Id.* at 12.) Plaintiff argues that the statement that "Molly will never take the blame of things," (Facebook Post at 1), and the subsequent anecdote about bullying are protected comments on Defendant Spino's aversion to "tak[ing] responsibility." (Pl.'s Opp. at 11.). Plaintiff argues that even if she had personal "antipathy" and "feelings as a mother" against Defendant Spino, the Facebook Post is nonetheless entitled to First Amendment protection. (*Id.* at 13.)

Defendants maintain that Plaintiff's speech was personal in nature and thus did not address a matter of public concern. (Def.'s Mot. at 10-12.) Defendants state that the "post did not relate to Ms. Spino's qualifications for the position or her views on any political matter" and that Plaintiff was merely "airing her *personal* grievance against Ms. Spino and her children." (*Id.* at 11.) Defendants take the position that "[w]hether or not Ms. Spino's children bullied Plaintiff's children, or whether or not Ms. Spino was able to adequately address that behavior does not b[ear] on her ability to hold public office." (*Id.*) They thus ask the Court to conclude that Plaintiff's speech is not protected by the First Amendment because the Facebook post was motivated by personal dislike and discussed Defendant Spino's "children and her parenting style." (*Id.* at 12.)

Although Plaintiff's Facebook Post may not have been a particularly high-minded piece of criticism, it is certainly protected by the First Amendment. The content of Plaintiff's Facebook Post can be "fairly characterized as constituting speech on a matter of public concern" as it, on the whole, speaks to Defendant Spino's character and fitness. *Connick*, 461 U.S. at 146. Bullying is a subject of public interest, and the way a political candidate—particularly one who is a member of a school board—handles it when her own family is concerned can be said to bear on the candidate's

11

character. The Supreme Court has stressed that discussion of a candidate's "character and…fitness" for office is at the heart of the First Amendment, even when that discussion contains "more suggestions and arguments than facts." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 325 (2010).

Further, the context of the speech supports the conclusion that it is protected by the First Amendment. As Plaintiff notes, her speech was published on a forum maintained by a political candidate in the run-up to an election. The Facebook Post was in conversation with another comment about the Assembly race, and the substance of the Facebook Post was an expression of support for a political candidate and a criticism of the behavior and character of her opponent.

Defendants' arguments against protection fail. The Second Circuit has been clear that "it does not follow that a person *motivated* by a personal grievance cannot be speaking on a matter of public concern," and it has repeatedly reaffirmed the proposition that "'the speaker's motive, while one factor that may be considered, is not dispositive as to whether his [or her] speech addressed a matter of public concern.'" *Sousa v. Roque*, 578 F.3d 164, 174-75 (2d Cir. 2009) (quoting *Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006)). The Second Circuit has also clarified that its "previous cases suggesting that the speaker's motive might indicate that the speech is not on a matter of public concern have focused primarily on private motives related to employment grievances," where the speaker wants to resolve a private issue within the workplace. *Reuland*, 460 U.S. at 417. But where the speech has "broader public purpose" and is not "calculated to redress personal grievances," the existence of personal animus will not automatically deprive the speech of First Amendment protection. *Lewis*, 165 F.3d at 163-64. Here, Plaintiff made her comments on the Spino children's behavior not for the purposes of receiving some employment advantage, such as a new bus route assignment, but for the "broader public purpose" of trying to persuade voters to

oppose Defendant Spino's candidacy. *Id.* at 164. Thus it cannot be said that Plaintiff's speech was purely personal in nature.

In sum, as a matter of law, the allegations of Plaintiff's complaint show she engaged in protected speech on a matter of public concern, and she has thus adequately pled a *prima facie* case of First Amendment retaliation against Defendants Molly Spino and the Torrington Board of Education.

### D. Count Two

Having concluded that Plaintiff's speech warrants First Amendment protection, the Court now considers whether Defendant Spino, sued in her individual capacity, is nonetheless entitled to qualified immunity at this stage of the proceedings. Defendant Spino contends that, on the facts alleged, it was reasonable for her to believe the Plaintiff's speech "violate[d] the [All-Star] Contract and Board policies" and would "cause[] disruption for the Board's operations," and so could be lawfully penalized under *Pickering*. (Def.'s Mot. at 19.)

A qualified immunity defense "can be presented in a Rule 12(b)(6) motion, but that... defense faces a formidable hurdle when advanced on such a motion," *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004), as a "more stringent standard [is] applicable to this procedural route," *id.* at 436. A court must "accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, including both those that support the claim and those that defeat the immunity defense." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (internal quotation marks omitted). "[T]he motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna*, 386 F.3d at 436 (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).

13

"Where, as here, the court has already determined that a plaintiff has properly alleged constitutionally prohibited conduct, the defendant official is entitled to immunity if either (1) the plaintiff's right not to be subjected to such conduct was not 'clearly established' at the time of the conduct or (2) the defendant's challenged action was objectively reasonable in light of the legal rules that were clearly established at the time it was taken." *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 273 (S.D.N.Y. 2006).

Because "[t]he prohibition against suspending or terminating employees for the content of their [protected] speech has been clearly established since 1968," an official "may prevail on [a] qualified immunity defense *only if it was objectively reasonable* . . . to believe that his conduct did not violate [Plaintiff's] rights." *Johnson v. Ganim*, 342 F.3d 105, 116 (2d Cir. 2003) (emphasis added) (citing *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 211 (2d Cir. 2002)); *see also Jackler*, 658 F.3d at 243 (reaffirming the *Ganim* proposition as to speakers who are not acting within the course of their official duties); *Richardson v. Pratcher*, 48 F. Supp. 3d 651, 663 (S.D.N.Y. 2014) ("When a defendant asserts an entitlement to qualified immunity on *Pickering* grounds, this Court analyzes the argument under the reasonableness prong of the qualified immunity test.").

Under the *Pickering* framework, "[a] government employer may take an adverse employment action against a public employee for speech on matters of public concern if: (1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for disruption outweighs the value of the speech; and (3) the employer took the adverse employment action not in retaliation for the employee's speech, but because of the potential for disruption." *Ganim*, 342 F.3d at 114. As to the third element, "[w]here a factual issue exists on the issue of motive or intent, a defendant's motion for summary judgment"—and, by extension, motion to dismiss—"on the basis of qualified immunity must fail." *Id.* at 117.

Here, Plaintiff's Complaint alleges certain material facts that may not be rebutted by Defendant Spino on a Rule 12(b)(6) motion. Specifically, the Court may not make conclusions as a matter of law as to the likely disruptiveness of Plaintiff's speech or as to Defendant Spino's motive for taking an adverse employment action.

On the issue of disruptiveness, the context of the complaint and related documents do not unequivocally require a conclusion that it was objectively reasonable for Defendant Spino to believe that her actions were lawful under *Pickering*. Defendant Spino asks the Court to examine the Torrington policy documents (Ex. B, C, and D), infer that the Facebook Post referred to Torrington students, and conclude that it was reasonable for Defendant Spino to read Plaintiff's speech as amounting to a fireable offense in violation of those policies, because the "Board should not have a bus driver on its routes that would speak about the Board's students in such a manner." (Defs.' Mot. at 16-17.) But as previously explained, the Court is unable to make those leaps at this stage, and thus lacks any predicate to conclude that Defendant Spino made any objectively reasonable determination as to the likely disruptiveness of Plaintiff's speech.

On the issue of retaliatory animus, Defendant Spino has offered no argument as to how the Court could make the subjective determination that she acted with a proper motive. When asked about this issue at oral argument, Defendant Spino maintained that Plaintiff's speech was unprotected and so the Court need not reach the issue of motive. She did not present any response to Plaintiff's claim that she had acted with "malice and reckless disregard for Plaintiff's constitutional rights." (Am. Compl. ¶ 24.) Indeed, to the extent Defendant Spino addressed this issue at all, her arguments as to qualified immunity indicated that she may have been angered by Plaintiff's Facebook Post. *See, e.g.*, Defs.' Mot. at 16 ("[I]t would be reasonable for Ms. Spino to be upset that Plaintiff publicly 'outed' her children as bullies on a public Facebook page."). Here, the

15

allegation that Defendant Spino acted with malice creates a factual dispute as to her actual motive for terminating Plaintiff.

Because it does not appear "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief," *Citibank*, 968 F.2d at 1494, and because "a factual issue exists on the issue of motive or intent," *Ganim*, 342 F.3d at 114, Defendant Spino's Motion to Dismiss Count Two on the basis of qualified immunity must be denied.

### III. Conclusion

Accordingly, Defendants' Motion to Dismiss [Doc. # 27] is DENIED in its entirety.

IT IS SO ORDERED.

/s/
_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of December 2019.